## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED  )
TRADES INDUSTRY PENSION FUND       )
GARY J. MEYERS, in his official capacity as  )
  a fiduciary,                          )
1750 New York Avenue, N.W.          )
Washington, DC 20006-5387           )
                                   )
                 Plaintiffs  )       CIVIL ACTION NO.
    v.                            )
                                   )
THE O.W. TAYLOR, LLC               )
    a/k/a O.W. Taylor, LLC           )
    a/k/a OW Taylor, LLC             )
    f/k/a The O.W. Taylor Co.        )
551 Locust Run Road                )
Cincinnati, OH 45245               )
                                   )
                Defendants   )

## COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

## JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §§1132, 1145; 29 U.S.C. §185(a); and/or 28 U.S.C. §1331. The claims asserted are all made under federal statutes or federal common law, but the supplemental jurisdiction of the Court under 28 U.S.C. §1367(a) also extends to any claims that are found to lie under state law.

2.    A copy of this Complaint is being served on the Secretary of Labor and the Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C. §1132(h) .

197412.

## VENUE

3.     Venue lies in the District of Columbia under 29 U.S.C. §1132(e)(2), 29 U.S.C. §185(a) and/or 28 U.S.C. §1391(b).

## PARTIES

4.     Plaintiff International Painters and Allied Trades Industry Pension Fund ("Fund" or "Pension Fund") is a trust fund established under 29 U.S.C. §186(c)(5). Its Trustees are the "named fiduciary," "plan administrator" and "plan sponsor" and each is an individual "fiduciary," within the meaning of 29 U.S.C. §§1102(a), 1002(16), (21), for the International Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan"). The Pension Plan and Annuity Plan are each a "multiemployer plan," "employee benefit plan" and "employee benefit pension plan" within the meaning of 29 U.S.C. §1002(37), (2) and (3). The Fund, Pension Plan and Annuity Plan maintain their principal place of business and are administered from an office in this district at the address for the Fund in the caption of this Complaint.

5.     Plaintiff, Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a fiduciary of the Funds within the meaning of 29 U.S.C. §1002(21) with respect to collection of contributions due the Funds and related matters. He has a business address as listed in the caption and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds as organizations.

6.     The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

   (a)     the Pension Plan,

   (b)     the Annuity Plan,

(c)    the Political Action Together Fund, which includes the Political Action Together – Legislative and Educational Committee and Political Action Together – Political Committee (jointly or severally, "PAT Fund"), which is an unincorporated association or fund established pursuant to 2 U.S.C. §431 et seq. by the International Union of Painters and Allied Trades for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office,

(d)    the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), which is a trust fund established under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3), and

(e)    the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), which is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. §186(c)(9).

7.    The PAT Fund, FTI and LMCI are jointly or severally referenced as "Ancillary Funds" and maintain their principal place of business and are administered from an office in this district.

8.    The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the PAT Fund, FTI and LMCI.

9.    The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are jointly or severally referenced as the "ERISA Funds." The ERISA Funds, LMCI and PAT Fund are hereinafter jointly or severally referenced as the "Funds."

10.    Defendant, The O.W. Taylor, LLC a/k/a O.W. Taylor, LLC a/k/a OW Taylor, LLC f/k/a The O.W. Taylor Co ("Company"), is an Ohio limited liability corporation and an

employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption. The Company does business with the Fund that is sufficient to create personal jurisdiction over the Company in this district and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

11.    At all times relevant to this action, the Company was party to or agreed to abide by the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). A true and correct copy of the cover page, table of contents, contribution provisions and joinder or signature page of the Labor Contract is attached as Exhibit 1.

12.    The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds. A true and correct copy of the Trust Agreement for the Fund is attached as Exhibit 2. True and correct copies of the cover page, table of contents §§10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as Exhibit 3, and the Annuity Plan has parallel terms.

13.    Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)    To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 2, p.15 (Art.VI, §2); Ex. 3, §10.07.

(b)    To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 2, pp.15-16 (Art.VI, §§3, 5).

(c)    To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 2, pp.16-17 (Art.VI, § 6).

(d)    To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b) and (c). Ex. 2, pp. 16-17 (Art.VI, §§4, 6); Ex. 3, §§10.07, 10.12.

14.    All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

### PLAINTIFFS

#### v.

### COMPANY

15.    The allegations of Paragraph 1 through 14 are incorporated by reference as if fully restated.

16.     Company has failed to pay to the ERISA Funds amounts due under the Labor Contracts, Trust Agreements and Plan from September 2007 through December 2007 in at least the sum of $10,139.42 based upon information presently available to the ERISA Funds in violation of 29 U.S.C. §1145.

17.     The ERISA Funds are adversely affected and damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enter judgment against Company in favor of the Plaintiffs, for the benefit of the ERISA Funds, for at least the sum certain amount plus any additional amounts which may become due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2).

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

**COUNT II - AUDIT**

**PLAINTIFFS**

v.

**COMPANY**

18.     The allegations of Paragraphs 1 through 17 are incorporated by reference as if fully restated.

19.     The amount of contributions the Company is required to pay to the Funds is based upon hours worked and paid to employees performing work covered by the Labor Contracts.

20.     The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of the Company's delinquency because the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Company.

21.     Computation of the precise amount of an employer's delinquency is best achieved by an audit of the employer's books and records to compare them to contractually-required remittance reports submitted by the employer.

22.     No audit of the Company's books and records has been performed.

23.     The Company is required by the Labor Contracts, Trust Agreements, plan documents of the ERISA Funds and/or applicable law to permit the Funds to audit its records, to cooperate in determining the contributions due the Funds and to pay the cost of the audit if found to be delinquent.

24.     The Funds and their fiduciaries or officers are adversely affected or damaged by the lack of an audit as, among other things, they have a duty to audit and confirm amounts due from contributing employers.

25.     The Funds and their fiduciaries or officers have no adequate remedy at law for lack of an audit as the calculation of any damages suffered as a result of the breach requires an audit.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)     Enjoin the Company, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records under the actual or constructive control of the Company and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due.

(2)     Order the Company to pay for an audit by a Certified Public Accountant chosen by the Funds, and

(3)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT III - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

### PLAINTIFFS

v.

### COMPANY

26.     The allegations of Paragraphs 1 through 25 are incorporated by reference as if fully restated.

27.     On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. §1145 in a period not barred by an applicable statute of limitations or similar bar.

28.     The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. §1145.

WHEREFORE, Plaintiffs ask that the Court:

(1)     After an audit, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit, together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until

the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid

contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of

the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with

any proceedings to enforce or collect any judgment all as provided under the Trust Agreements,

Plan and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or

appropriate.

## COUNT IV - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

**v.**

### COMPANY

29.    The allegations of Paragraphs 1 through 28 are incorporated by reference as if

fully restated.

30.    The Company has not paid the Funds as required by the Labor Contract, and other

documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents

of the ERISA Funds.

31.    Plaintiffs have been damaged as a proximate result of the breach of Labor

Contract and/or its incorporated documents by Company.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of

the Funds, for the sum certain currently due plus any additional amounts which become due and

owing during the pendency of this litigation or as a result of an audit together with liquidated

damages, interest and costs, including reasonable attorneys' fees incurred in this action or the

collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT VI - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

### PLAINTIFFS

**v.**

### COMPANY

32.    The allegations of Paragraphs 1 through 31 are incorporated by reference as if fully restated.

33.    Plaintiffs are damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

_____
PHILIP A. LOZANO
Bar No. 979737
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669
Attorneys for Plaintiffs

Date: 7/11/08

197412

11

LOCAL UNION _G00027_

DATES _6/1/06 – 5/31/09_

PENSION PAGES _2, 6, 9, 10, 11, 20, 22, 25_

RATES _PENSION $ 1.00     ANNUITY $ 3.75 = $ 4.75_

WAGES _pg 6 & 10 (b)_

APPRENTICESHIP RATES _pg 10_

SUBCONTRACTING _pg 9_

50% CLAUSE _pg 9_

JURISDICTION CLAUSE _____/_____

ROLLOVER _pg 25_

MODEL CLAUSE _pg 20_

LMCI _pg 22 (.03)_

PAT _pg 2_

JATC _pg 11 (.65)_

EXHIBIT
1

## Contract Profile (Inquiry)

**Shop Collective Bargaining Agreement**

**Title:  (LU27) GLAZIERS AGREEMENT – CHICAGO & VICINITY ID Number:  DC000014180000O00**

| Effective Date | End Date | Status | Report Day | Report Form |
|---|---|---|---|---|
| 2006-06-01 | 2009-05-31 | ACTIVE | 20 | MONTHLY |
| Status Modification Date | Pension Participation Date | Administration Method | Revision Number | Revision Date |
| 2004-04-02 | 0001-01-01 | N | 00 | 2006-07-28 |

**Contract Rates Data**

**SCHEDULE A**

For **RATE HISTORY & PROJECTIVE FUTURE** please select Zone and Trade



| | Zone | Affiliation | Zone Description | Trade | WAGES | IUPAT INDUSTRY PENSION | IUPAT INDUSTRY ANNUITY | PAT | LMCI | FTI |
|---|---|---|---|---|---|---|---|---|---|---|
| ◉ | 01 | LU000027/DC000014 | G00027 CHICAGO IL/OUTSIDE GLAZIERS | GLAZING | $33.00 | $1.00 | $3.75 | $0.05 | $0.05 | $0.05 |

For **SCHEDULE B** please select Zone and Trade



### Contract Features Data

| Feature Code | Feature Description | Reference |
|---|---|---|
| FT100 | JURISDICTION GEOGRAPHIC | PAGE 9 |
| FT101 | JURISDICTION WORK | PAGE 7-8 |
| FT102 | SIGNATORY PAGE | PAGE 25 |
| FT105 | ADMINISTRATOR DUES | PAGE 2 |
| FT106 | PENSION AFFILIATED | PAGE 20 |
| MC005 | NATIONAL IUPAT-JATF SECT 245 | PAGE 11 |
| MC002 | OUT OF AREA CLAUSE SECTION 242 | PAGE 9 |
| MC014 | LMCI CLAUSE – SECTION 246 | PAGE 22 |
| MC016 | ROLLOVER CLAUSE | |
| MC018 | SUBCONTRACTOR CLAUSE | |
| FT107 | STATUS 9(A) OF THE NLR ACT | PAGE 1 |

### Contract Funds Data

| Zone | Fund Code | Fund Description | Reference |
|---|---|---|---|
| 01 | FND001 | WAGES | |
| | FND002 | IUPAT INDUSTRY PENSION | |
| | FND003 | IUPAT INDUSTRY ANNUITY | |
| | FND005 | PAT | |
| | FND006 | LMCI | |
| | FND007 | FTI | |
| | FND011 | HEALTH WELFARE FUND | |
| | FND024 | LOCAL APPRENTISHIP FUND | |
| | FND029 | LOCAL PENSION FUND | |
| | FND112 | SAFETY AND TRAINING | |



June 28, 2006

RECEIVED

JUL 1 3 2006

GENERAL PRESIDENT'S OFFICE

## ARTICLES OF AGREEMENT

**ARTICLES OF AGREEMENT** made this first day of June, 2006 by and between **ASSOCIATION OF GLAZING CONTRACTORS ASSOCIATION** and **PAINTERS DISTRICT COUNCIL NO. 14** and its affiliate, **GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27, CHICAGO AND VICINITY**, of the International Union of Painters and Allied Trades, AFL-CIO (the "Union").

### ARTICLE 1

### PARTIES

Whenever the word "Association" is used herein, it shall mean the ASSOCIATION OF GLAZING CONTRACTORS and all of its members individually and collectively, whether now belonging to said Association or who may hereafter be admitted to membership. The members of said Association [and any other employer who is not a member of the Association but is otherwise bound by this Agreement] being sometimes hereinafter referred to as "Employer."

Whenever the word "Union" is used herein, it shall mean the PAINTERS DISTRICT COUNCIL NO. 14 and its affiliate, GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27, CHICAGO AND VICINITY, of the International Union of Painters and Allied Trades, AFL-CIO and all of the local unions affiliated therewith and all of the members thereof, individually and collectively bound hereafter, whether now members of said local unions or who may hereafter become members of said unions. The members of said unions being sometimes referred to hereinafter as "Employees."

### ARTICLE 2

### RECOGNITION – UNION SHOP

**Section 1. Recognition of Union.**          The Association and the employers it represents in bargaining and such other Employer as may become members of the Association or who agree to be bound by the terms of this contract recognize the Union as the sole and exclusive bargaining agent for a unit of employees appropriate for bargaining within Section 9(a) of the National Labor Relations Act. The Association and the Employers it represents in bargaining agree that this recognition is predicated upon the Union's unequivocal demand for 9(a) recognition as majority representative of a unit of all glazing employees and the Union's contemporaneous showing of and offer to provide an evidentiary basis of its majority support based upon signed and dated authorization cards, the Association acknowledges and accepts the proof of a clear showing of majority support by bargaining unit employees without the need for a National Labor Relations Board certified election under Sections 9(a) and (c) of the Act and agrees it (they) will not request an NLRB election and expressly waives the right to do so for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, employment practices, standards of workmanship, safety practices and other conditions of employment.

June 28, 2006

**Section 2.  Recognition of Association.**    (a) The Union recognizes the Association as the sole and exclusive bargaining agent of the Employer members of the Association and of such other Employers as may become members of the Association or agree to be bound by the terms of this agreement, as to all matters concerning Employees in the Bargaining Unit.

(b)    The Association has been designated as the sole and exclusive bargaining agent of its Employer members and agrees to produce evidence requested by the Union to confirm this authority, including its Constitution, By-Laws, and applications for members.

(c)    The Association shall notify the Union of each additional individual signing up in writing within twenty-four (24) hours following the approval of the application for membership in the Association. Any individual Employer who seeks to withdraw membership in the Association must notify the Union and the Trust Funds in writing and remain bound to the collective bargaining agreement as amended thereafter in future negotiations with the Association unless timely notice is given.

**Section 3.    Union Security Clause**

All present employees who are members of the Union on the effective date of this Agreement or on the date of execution of this Agreement, whichever is the later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on and after the eighth day following the beginning of their employment, or on and after the eighth day following the effective date of this Agreement or the date of execution of this Agreement, whichever is the later.

**Section 4.    Dues Checkoff**

Every Employer subject to and bound to this Agreement, hereby agrees to check-off from the wages of any Glaziers employed by such Employer, during the terms of this Agreement, Administrative Dues per the conditions set forth in the Union's By-Laws and remit two percent (2%) of the gross pay or such amount as may be determined by the International Union of Painters and Allied Trades to the Union on or before the 10th day of the following month.

**Section 5.  Voluntary Payroll Deduction of Political Contributions.**

(a)    Commencing June 1, 2006 and for the life of the agreement the Employer shall honor authorizations for check off of political contributions deductions from wages of Employees employed by such employer during the term of this agreement in the amount of five cents (5¢) per hour worked to the Painters District Council No. 14 Illinois Political Committee (LPC) and to forward all contributions deducted in the employees name and reports on contributions on or before the 10th day of each month for the previous work month to Painters District Council No. 14 LPC Fund.

June 28, 2006

(b)    The Union shall defend, indemnify and save the Employer harmless against any and all claims, demands, suits or other forms of liability that may arise out of or by reason of action taken regarding the creation and administration of the political action check off established by this Article.

**Section 6.**   When hiring new Employees, the Employer shall give first consideration to qualified Glaziers and Apprentice Glaziers who have prior experience with Employers covered by this Agreement and performing work within the area covered by this Agreement. It is recognized, however, that the Employer has the final right to select the Employees to be hired. It shall be the responsibility of the Union to assist the Employer in obtaining competent Glaziers.

Upon an Employer's request for specific manpower, the Union will advise which glaziers then available for referral are certified welders, have completed safety courses and are certified to and will work from swing stages and scaffolds.

If an Employer is unable to obtain sufficient employees in any classification through the Glaziers Local 27 referral procedure within 48 hours excluding Saturday, Sunday and holidays from the time the request is made, it may subcontract the work for that job to a union contractor without regard to any other provision of this Agreement.

**Section 7.**    **Non-Discrimination.**

The Employer, the Union, and Employees agree to conform to any law applicable and that there will be no discrimination in the hiring of Employees or in their training, layoff, discipline, discharge, referral, membership in the Union, or otherwise because of race, color, creed, national origin, religion or sex.

## ARTICLE 3

## HOURS AND WORK RULES

**Section 1.**    Eight (8) hours shall constitute a day's work between the hours of 7:00 A.M. and 4:30 P.M., with one-half (½) hour interval for lunch.  A day will be 7:00 A.M. to 3:30 P.M. or 8:00 A.M. to 4:30 P.M., as directed by the Employer. No Employee will be employed for a fractional part of a day's work. Any Employee who is late in reporting for work will only be paid for the time he actually works, provided work originally scheduled is available. If any Employee is late or fails to appear, immediate efforts to obtain a replacement, if it is known he is not going to appear, will be made, and the remaining Employees will immediately start work that can be performed without the absentee(s) or his/her/their replacement(s). Any replacement will only be paid for the time he/she actually works.

-3-

June 28, 2006

The Union will permit a 6:00 a.m. start time for a 6:00 a.m. to 2:30 p.m. work day only if Employer gives the Union advance written notice of its request for an early start which may be via fax or electronic mail, no later than 4:00 p.m. the business day before the work is to be performed. The notice shall state: (1) the job location; (2) the men working on the site; (3) the duration of the project; and (4) day(s) for which an early start is requested.

Failure of the Employer to give prior advance written notice will result in premium pay being due for all hours worked before the regular 7:00 a.m. start time subject to review by the Joint Grievance Board. An employee pay claim for premium pay for early start must be brought within two pay periods of the occurrence.

With mutual consent of both Employer, Employee and the Union, for shops employing four (4) or less Employees, that the interchange of Employees be allowed for jobs under four (4) hours with shops employing no more than five Employees.

When an Employee reports on a job and is told not to start work, the Employer shall pay two (2) hours show up time, at the prevailing rate of wages. Once work has started and weather conditions become such that the Foreman and the Union decide the job is unworkable, the Foreman and entire crew may be sent home and paid for a four (4) hour day. At the start of the fifth hour, Employees must be paid for eight (8) hours.

Any work performed on a single shift outside the regular hours of work set forth in Section 1 above shall be paid at double time.

When a specific job requires glazing employees to work a single shift between the hours of 4:30 p.m. to 6:00 a.m. for not less than five (5) continuous work days duration, Employees shall be paid fifteen (15%) percent over and above the regular straight time hourly rate of pay for each hour worked. The pay rate for this work shall not be applied in excess of eight (8) hours per day. Failure to report to the Union prior to commencement of the work will require full premium pay for all hours worked on the project.

Shift work means work performed Monday through Friday exclusive of weekends and holidays. Any work performed on weekends shall be paid at premium pay. Duration refers to the job and not to the man.

A shift must begin on a Monday and end on a Friday. "Shift" refers to job and duration (five days) and not men. Men may be added after the shift begins. Men beginning a shift must complete the shift. No Employee shall lose work as a result of the shift.

<u>Section 2A</u>.    The Employer agrees not to require the Employees covered by this Agreement to transport any materials or equipment within their own private automobile, except the employee's own tools. However, an Employee may agree to transport the Employer's material and equipment in

4

June 28, 2006

his car, but he will not be liable for loss or damage. It is agreed an employee's automobile shall not be considered as a condition of employment. However, each Employee is required, as a condition of employment to provide the following hand tools: Tool box or bag, chisels, screwdrivers (straight and Phillips), nail set, hack saw, awl, Stanley knife, claw hammer, mallet, rule, file, rubber or vinyl cutter, glass pliers, wonder tool (jimmy bar; small); putty knives (straight and bent). The Employer shall furnish his Employees with their first hard hat but the employee may pay for replacements for such hard hat, normal wear and tear expected. The Employer will also provide all power tools and suction cups. Employees will be required to sign an official form to use company suction cups and power tools for the term of the employment. The Employee will be held responsible if the cups and power tools are not returned and will be charged the price of a comparable cup or power tool.

**Section 2B**.    No Employee shall be required to walk up more than eight (8) floors from any level on any job site, this section to become effective providing a majority of other crafts of the Building Trades in the Chicago Metropolitan area have agreed to the same type of arrangement in their respective Union Labor Agreement.

**Section 3**.    No Employees covered by this Agreement will be allowed to work before 8:00 A.M., after 4:30 P.M., or on Saturdays, Sundays or holidays without notification to the Union prior to such work, except as otherwise provided in Article 2, Section 1, herein.

Employer may assign work to be performed on Saturday and Sunday to qualified members of the bargaining unit from June 1, 2006 to May 31, 2009. Notice of any complaints or abuse will be submitted to the Association.

The Union will have the right to refuse such overtime to Employers and Employees who are in arrears of Health and Welfare, Pension and Apprentice Fund Fringes, Dues Check off or Local Dues.

**Section 4**.    The following days shall be observed as holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. No work shall be performed on Labor Day.

**Section 5**.    All regular Employees working for an Employer shall be rotated equally where possible, consistent with efficient operations.

**Section 6**.    Employees will adhere to job safety regulations.

## ARTICLE 4

## OVERTIME

When Employees are asked to work after cessation of a regular day's work (minimum of one-

5

June 28, 2006

half (½) hour work), time and one-half (1 ½) shall be paid for the first two (2) hours of such overtime each day, Monday through Friday, and double time shall be paid after such two (2) hour overtime period each day, Monday through Friday. Saturdays, Sundays and holidays shall be paid at the rate of double time. The Employee shall be paid to the next nearest one-half (½) hour for all work performed on overtime.

However, on Saturdays and Sundays when the job duration does not exceed four (4) hours, eight (8) hours pay at the straight time rate will be allowed through mutual agreement between the Employer and Union (between the hours of 8:00 A.M. and 4:30 P.M.). There shall be no fractional part of the 8:00 A.M. to 12 P.M.(noon), or 12:30 P.M. to 4:30 P.M.

## ARTICLE 5

## WAGES

**Section 1.**    Effective June 1, 2006 through May 31, 2007 the rate of wages to be paid by the Employer to journeyperson glaziers shall be Thirty Three Dollars ($33.00) per hour or Two Hundred Sixty Four Dollars ($264.00) per day.

Effective June 1, 2007 to May 31, 2008, the negotiated increase to the Union's total economic package shall be Three Dollars and 25/100 ($3.25) per hour to be allocated between wages and benefits by the Union in its sole discretion.

Effective June 1, 2008 to May 31, 2009, the negotiated increase to the Union's total economic package shall be Three Dollars and 35/100 ($3.35) per hour to be allocated between wages and benefits by the Union in its sole discretion.

**Section 2.**    There shall be an established pay day for all employees at least one (1) day each week of the Agreement. Employers shall not hold back more than three (3) days' pay. All deductions, such as Social Security, withholding tax, administrative dues, etc., must be noted on the check stubs. Employer's failure to issue pay checks or tender an insufficient fund check for wages shall not be subject to the no strike provisions of Article 18, Section 2.

**Section 3.**    When employees are laid off or discharged, they shall be paid in full at the time of such layoff or discharge. An employee quitting of his own accord shall be paid on the next regular pay day.

**Section 4.**    Employees working on a daily referral will be paid on the next regular pay day.

6

June 28, 2006

## ARTICLE 6

## BONUSES

**Section 1.**     It is agreed that the Employer shall not pay bonuses of any kind or description to Journeyperson Glaziers, directly or indirectly, except as provided for in Article 5; Article 12; and Article 13.

## ARTICLE 7

## CLASSIFICATION/SCOPE OF WORK

**Section 1.**     Glaziers, Architectural Metal and Glass Workers General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, distributing, handling or removal of the following on site:  art glass, prism glass, beveled glass; leaded glass, protection glass, plate glass, window glass, pre-glazed windows, mirrors of all types. wire glass. ribbed glass, ground glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, stick curtainwall systems, tempered and laminated glass, thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, skylights, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above materials on the job site, either temporary or permanent, on or for any building in the course of repair, remodel, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and vinyls, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels as set forth below, skylights, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and stick curtain wall systems and unitized systems as set forth below; (4) the glazing of automatic door and entrances and revolving doors; the installation of door(s) and window(s) frame assemblers such as patio sliding or fixed doors, vented or fixed windows, shower doors, bathtub enclosures, storm sash where the glass becomes an integral part of the finished product, including the maintenance and repair of all of the above; the fabrication and distribution of all glass and glass-related products on site; (5) any and all handling, unloading and loading of tools, equipment and materials will be performed by members of this International Union.

The Employer shall, when requested by the Union, deliver a "Letter of Assignment" and/or a "Letter of Past Performance" in form and substance as will clearly state that a certain type of work was assigned to and performed at a given location by Glaziers under this Agreement.

For unitized systems involving curtain walls an employer who has never performed this work

7

June 28, 2006

may subcontract the work without violating this agreement. Subject to the provisions of Article 8 below, if an employer performs this work with his own employees, it must be performed by glaziers.

Scaffolding of any type or description incorporating all safety rules (except scaffolding provided by the General Contractor and/or patent type scaffolding, the use and erection of which shall have been contracted for by the Employer); and the installation of the above materials when in the shop or on the job site, either temporary or permanent, on, or for any building in the course of repair, remodel, alteration or construction.

## ARTICLE 8

## RECOGNITION OF PAST PRACTICES

That an employer who as of January 1, 2003 is signatory to a written collective bargaining agreement with both Glaziers Local 27 and another labor organization that claims overlapping work jurisdiction may assign that portion of the work consistent with that employer's past practice in effect before January 1, 2003.

That for such dual signator employers signed to both agreements as of January 1, 2003, the Union waives any grievances and/or contract claims for pay in lieu of work performed by another trade. Welfare, Pension and Apprentice Training fringe benefits based upon hours worked in covered employment by members of another labor organization shall not be due.

That a dual signator employer who was signed as of January 1, 2003 to both Union agreements may subcontract work consistent with and in conformance with that employer's past practice prior to January 1, 2003.

Employer must provide evidence of past practice immediately upon request by the Union.

That the Union with its own counsel and employer's cooperation will defend an employer in a jurisdictional dispute commenced by another labor organization claiming work covered within the Glaziers work jurisdiction brought before the National Labor Relations Board.

All employers must assign and subcontract work consistent with the terms of the Glaziers Union agreement subject to the above.

The employer shall, when requested by the Union, deliver a "Letter of Assignment" and/or "Letter of Past Performance" in form and substance as will clearly state that a certain type of work was assigned to and performed by Glaziers under this Agreement.

8

June 28, 2006

# ARTICLE 9

## SUB-CONTRACTING

**Section 1.** Subject to the provisions of Article 8 above, all covered work under this Agreement undertaken by the Employer within the geographic territory described in Article 10 above shall be performed by Employees covered by this Agreement.

**Section 2.** Employers shall not contract any work covered by this Agreement to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work to any person, firm, or company who does not have an existing labor agreement with Glaziers Local 27.

# ARTICLE 10

## GEOGRAPHICAL AREA

**Section 1.** This Agreement applies to all covered work under the terms of this Agreement performed within the following geographical area:

The territorial jurisdiction of the District Council for Glaziers shall be as follows: Cook, DuPage, Lake, McHenry, Will, Kankakee, Grundy, Kendall and Kane Counties in Illinois, and the Indiana counties of Lake (east to Route 53) and Newton (east to Route 55) and such additional jurisdiction as set forth in the Union's Grant of Charter and as determined by the General Executive Board from time to time under Section 70 of the IUPAT General Constitution.

**Section 2.** It is agreed that where glazing contracts are taken outside of the specified territory covered by the Agreement, not less than twenty-five (25%) percent of the Glaziers or Apprentices employed shall be among the Employees of the Employer who are then employed under the terms of this Agreement.

**Section 3.** The contractor or the employer party to this agreement, when engaged in work outside the geographical jurisdiction of the Union party to this agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area.

9

June 28, 2006

# ARTICLE 11

## LODGING

When Glaziers are sent out of the area specified in Section 1, Article 8, where it is impractical for them to return home each night, the board, lodging if necessary, and transportation costs shall be paid by the Employer, and all riding time, but not to exceed four (4) hours, shall be paid at the rate of single time.

# ARTICLE 12

## APPRENTICES

**Section 1.**      Apprentices shall be indentured in the employ of the Employer in accordance with the Apprenticeship Program approved by the United States Department of Labor.

**Section 2.**      The Employer shall be entitled to one (1) Apprentice for the first three (3) Journeyperson Glaziers employed and one (1) for each additional three (3) Journeyperson Glaziers employed.

(Exception: If the Employer's right to train apprentices has been revoked by the Joint Apprenticeship and Training Committee). This section shall not be construed to replace any Journeyperson in any shop when the Joint Apprenticeship and Training Committee determines that substantial unemployment exists in the area.

**Section 3.**      The wages of the apprentice shall be as follows:

| | | | |
|---|---|---|---|
| 1. | First six months | - | 50% of Journeyperson's wage rate |
| 2. | Second six months | - | 55% of Journeyperson's wage rate |
| 3. | Third six months | - | 65% of Journeyperson's wage rate |
| 4. | Fourth six months | - | 75% of Journeyperson's wage rate |
| 5. | Fifth six months | - | 85% of Journeyperson's wage rate |
| 6. | Sixth six months | - | 95% of Journeyperson's wage rate |

After three (3) years of apprenticeship and upon certification of the J.A.T.C. Instructor and J.A.T.C. Trustees, he or she shall be given the Journeyperson's wage rate.

10

*Friday, July 28, 2006*

<u>Local Union 27 – DC14</u>
**Glaziers Agreement – Chicago & Vicinity effective June 1, 2006
through May 31, 2009**

<u>Apprentice effective June 1, 2005 through May 31, 2006</u>

| <u>Glaziers</u> | $31.40 |
|------|------|
| 35% | $10.99 |
| 45% | $14.13 |
| 55% | $17.27 |
| 70% | $21.98 |
| 80% | $25.12 |
| 90% | $28.26 |

<u>Apprentice effective June 1, 2006 through May 31, 2007</u>

| <u>Glaziers</u> | $33.00 |
|------|------|
| 50% | $16.50 |
| 55% | $18.15 |
| 65% | $21.45 |
| 75% | $24.75 |
| 85% | $28.05 |
| 95% | $31.35 |

vf/iupat 1937
f/AGREEMENTS/LU27                    (10b)

June 28, 2006

**Section 4.**    Apprentices can be used on all glass setting as follows:

| Persons required per setting schedule | Apprentices allowed |
|---|---|
| 2-5 | 1 |
| 6-8 | 2 |
| *9 and above | 3 |

* 3 Apprentices is the maximum allowed on any size glass.

Any time 3 apprentices are used, at least one of the three must be in his/her final year of apprenticeship.

**Section 5.**    A Joint Apprenticeship Committee composed of three (3) representatives of the Glazing Contractors of Chicago and Vicinity and three (3) Union representatives shall be established in conformity by the United States Department of Labor, Bureau of Apprenticeship and the Glaziers Joint Apprenticeship Agreement of Chicago and Vicinity.

It shall be the duty of this Committee to implement the present Apprenticeship Program and to establish the rules of its operation and such Committee shall meet at least once each quarter for such purpose.

**Section 6.**    Apprentices shall not work alone and shall be with a Journeyperson Glazier on each job. All journeymen shall first be given the right of first refusal to available overtime before an apprentice shall be permitted to work overtime. Apprentices will not be scheduled to work on his or her regularly scheduled school day.

**Section 7.**    The parties hereby agree to become participants in the National Glaziers and Glassworkers Industry Apprenticeship Training and Journeyman Education Fund, and the Employer shall contribute to said Fund, Sixty Five Cents ($.65) for each hour worked by employees under this Agreement, effective June 1, 2006 plus such additional amounts as may be allocated by the Union in its sole discretion June 1, 2007 and June 1, 2008.

Effective January 1, 2003 contributions on behalf of the National Apprentice Fund shall be made to the Glaziers Union Local No. 27 Joint Apprenticeship Fund.

**Section 8.**    Employers will be notified by the Glaziers Union Local No. 27 Joint Apprenticeship Training Committee when Journeyperson classes are offered.

11

June 28, 2006

**Section 9.**     Apprentices shall attend school for a full eight (8) hour day conducted during the regular work week. Once every other week on a bi-weekly basis during the regular apprentice school term to achieve their required 144 hours of training per year. Apprentices shall not be scheduled to work on their school day. Employer shall not be responsible for payment of wages or benefits for the apprentice's school day.

## ARTICLE 13

## SWING STAGE/SCAFFOLD/INSURANCE

**Section 1.**     Whenever Glaziers and Apprentices are required to work on swing stages, scaffold, hydraulic or electric scaffold or jacks of any description or with window washer belts where there is a thirty (30) foot or more fall, they shall receive Fifty Cents ($.50) per hour over the prevailing rate of wages for such work.

**Section 2.**     Where skylights are glazed and are held in place by bolts, screws or nuts from the inside of the opening, which creates a most hazardous condition for the Glazier, Fifty Cents ($.50) per hour over the prevailing rate of wages shall be paid for such work.

**Section 3.**     It is agreed that all necessary scaffolding, etcetera, required on any building during the course of construction or repair, shall be furnished by the Employer. It is agreed that scaffolding, either rented or owned by the Employer, can be erected initially and dismantled by Glaziers or qualified erecting companies provided that such work is done in conformity with the State Laws of Illinois.

**Section 4.**     It is also agreed that the Employer must carry all necessary and required insurance, covering all of his Employees. He shall carry Worker's Compensation Insurance in the State in which his Employees are working. He shall also make contributions for Social Security and unemployment insurance as required by law regardless of the number of men employed by him. Each Employer shall file with the Union a certificate of such Workmen's Compensation Insurance containing not less than a ten (10) day notice of cancellation.

**Section 5.**     Should any Employee meet with an accident while at work, the person in charge of the work shall see that the Employee is cared for. Transportation shall be furnished to a doctor or to a hospital by the Employer at the Employer's expense. All injuries, regardless of how minor, will be reported to the Employer within twenty-four (24) hours by the foreman, supervisor and/or the injured Employee.

June 28, 2006

## ARTICLE 14

### FOREMAN/SHOP STEWARD

**Section 1**.     The Business Representative and Shop Steward shall be furnished a list of all new hires by the Employer.

**Section 2**.     The Union shall have the right to appoint a Shop or Job Steward in each shop from the Union members regularly employed in each shop.

**Section 3**.     Where an Employer has been found to have engaged in:

(a)     multiple violations of the provisions of this Agreement by the Joint Grievance Committee or by an arbitrator;

(b)     a violation of the fringe benefit provisions of this Agreement, either by a court order or by a delinquency settlement agreement; or

(c)     a violation of the rules of the apprenticeship program as determined by the JATC;

then for the next twelve (12) months of active glazier employment, the Union shall have the right to appoint and place with the Employer a steward of its own choosing from outside the Employer's work force in order to police the agreement.

**Section 4**.     All Foremen shall receive One Dollar and 50/100 ($1.50) per hour above the prevailing scale.  At the option of the Employer, a General Foreman can be appointed and be paid Two Dollars and 00/100 ($2.00) per hour above the prevailing scale.

**Section 5**.     A Foreman shall be appointed by the Employer for all work contracted for by the Employer, when the size of the crew exceeds three (3) persons.

The duties of the Foreman, among others, shall be as follows:

(A)     Seeing that material requirements and equipment are available for the most efficient conclusion of the job.

(B)     When necessary, inform his/her Employer of glass types and sizes required.

(C)     Coordinate glass and glazing work with other trades.

13

June 28, 2006

   (D)    When requested, report Glaziers' time on Employer's regular time cards.

## ARTICLE 15

## EXPENSE MONEY

Each Journeyperson Glazier and Apprentice Glazier shall receive Five Dollars ($5.00) per day Expense Money regardless of where they work.

## ARTICLE 16

## GLASS SCHEDULE

**Section 1.**    It is agreed that the following glass schedule of work and persons shall apply for all work contracted by the Employer:

Number of Persons up to, but not including 3/8"

From 120 united inches up to 150 united inches -    2
Not over 175 united inches                      -    3
Not over 200 united inches                      -    4
Not over 225 united inches                      -    5
Not over 240 united inches                      -    6
Not over 260 united inches                      -    7
Not over 300 united inches                      -    8

Over 300 united inches, Add one person for each 15 united inches.

Glass schedule for 3/8" and above is based on 3.25 lbs. Per 1/4" of glass and square footage calculated on actual inch above fractions, i.e. 60 ½ = 61.

3/8" and up to but not including 3/4"

Will be total weight divided by sixty pounds (60#) per person.  (See schedules attached hereto as Appendix A and Appendix B.

3/4" and above

Will be total weight divided by seventy pounds (70#) per persons.  (See schedule attached hereto as Appendix C).

When automatic lift equipment is used, the person power requirements set forth in the up to,

14

June 28, 2006

but not including 3/8" schedule shall apply (providing the glass does not have to be unloaded or moved manually).

**Section 2.**     To determine the number of persons required for Insulating Glass Units, use total glass thickness as follows:

Up to 3/8" of glass, use up to, but not including 3/8" schedule
From 3/8" up to 3/4" use - 60 lbs. per person
For 3/4" and over use - 70 lbs. per person

e.g.     1/8" glass – 1/4" air space – 1/8" glass = 1/4" - use schedule
1/4" glass – ½" air space – 1/4" glass = ½" - use 60 lbs. per person
½" glass – ½" air space – 1/4" glass = 3/4" - use 70 lbs. per person

**Section 3.**     It is further agreed that: (1) when glass is manually lifted seven (7) feet or more to platform level, or (2) when weather conditions require it, additional persons shall be used on the following basis:

| | |
|---|---|
| First size enumerated in the applicable schedule – | 1 Additional Person |
| Next two sizes enumerated in the applicable schedule – | 2 Additional Persons |
| Next three sizes enumerated in the applicable schedule – | 3 Additional Persons |
| Next four sizes enumerated in the applicable schedule – | 5 Additional Persons |

Union Glazing Schedule
Persons Required

Plastics Up To and Including ½"

| UNITED INCHES | When manually lifted Under 7 ft. to platform level - persons required | When manually lifted 7 ft. or more to platform level - persons required |
|---|---|---|
| From 120 United Inches | 2 | 3 |
| Up to 160 United Inches | 3 | 4 |

All safety precautions will be adhered to.

**Section 4.**     Upon request of the Foreman for extra help, the same shall be furnished by the Employer.

**Section 5.**     It is further agreed that all trucks setting glass shall be equipped with a first aid

15

June 28, 2006

kit. If employees ride the back end of the truck, the truck must be equipped with a tarpaulin.

June 28, 2006

**Section 6.**    It is further agreed that chauffeurs, drivers of trucks, glazing superintendents (so-called) or Employer shall in no way assist directly or indirectly in the setting of glass.

**Section 7.**    Chauffeurs or drivers of trucks shall not hold ladders or in any manner shape or form be the supervisor of Glaziers on any glazing job. Truck drivers belong on the truck only.

**Section 8.**    It is also agreed that the Employer shall identify all trucks or vehicles used in the glass and glazing trade by the name of the Employer permanently affixed to each side of the truck of vehicle.

**Section 9.**    All wood sash shall be bedded in putty, blocked and sufficiently pointed, and the putty line must be extended to cover to the end of the rabbet.

**Section 10.**    The Business Representatives or any other authorized representative of the Union, shall have the right to visit all places, shops or jobs where work is going on for the purpose of inspection. They shall also have the right to examine working cards and pay envelopes of all employees covered by this Agreement.

**Section 11.**    No Employer shall at any time make any arrangements whatsoever, written or oral, with any Glazier for the performance of glazing work or any description whatsoever, other than to employ Glaziers as provided for in this Agreement in the usual and regular manner.

## ARTICLE 17

## RESETTING GLASS/REMOVAL OF GLASS

It is also agreed that where storefronts are to be reset, the glass schedule shall apply when glass is removed from the opening.

When a plate is broken and a replacement is being made in two (2) or more lites, the salvage may be stripped out of the opening with the crew required for one-half (½) opening (minimum three (3) persons required), so long as no single piece larger than one-half (½) of the opening is removed.

## ARTICLE 18

## GRIEVANCE PROCEDURE

Any grievance arising under this contract shall first be brought before the Board of Business Agents of the Union. If the Union and the Employer are unable to resolve the dispute, either party may submit the matter to Step 2 for final and binding resolution.

**Step 2.**    Any grievance, dispute, misunderstanding or difference arising during the life of

17

June 28, 2006

this Agreement, interpretation of the same shall be decided by a Committee composed of three (3) representatives appointed by the Employers and three (3) by the Union whose majority decision shall be final and binding upon all parties to the dispute. Representatives will be appointed only for the length of the contract. In the event of the Committee's inability to decide an issue or a deadlock by the Committee, a third party shall be selected by them to act as an Arbitrator. In the event that they are unable to agree, an impartial arbitrator shall be selected from a list submitted by the Federal Mediation and Conciliation Service upon the request of either party to this Agreement.

The Federal Mediation and Conciliation Service will submit a list of five (5) Arbitrators. The Union shall strike the first name from the list and the Employer shall then strike one name, and thereafter the parties shall strike alternately. The person whose name remains, shall be the Arbitrator, provided that either party, before striking any name, shall have the right to reject one (1) panel of Arbitrators. The Arbitrator shall be notified of this selection by a joint letter from the Employer and the Union requesting that he/she set a time and place for the hearing, subject to availability of the Employer and the Union representative. The letter shall specify the issue(s) to the Arbitrator.

The Arbitrator shall have no right to amend, modify, nullify, ignore or add to the provisions of the Agreement. He/she shall consider and decide only the particular issue(s) presented to him/her in writing by the Employer and the Union, and his/her decision and award shall be based solely upon his/her interpretation of the meaning or application of the terms of this Agreement to the facts of the grievance presented. The award of the Arbitrator shall be final and binding on the Employer, the Union and the Employee(s) involved.

The expenses of the Arbitrator, including his/her fee, shall be equally shared by the Employer and the Union. If an Arbitrator determines that the violation of the Agreement is willful, he/she shall have the authority to attach to any monetary award rendered hereunder a liquidated damage of Twenty Five Percent (25%) of such award to be paid to the grieving party.

If the Employer fails to comply with any award or decision of the Arbitrator, then the Union will not be prohibited by Section 2 of this Article from resorting to economic and/or legal action including withholding of services, striking or picketing during the period of such non-compliance; providing the Union, before resorting to such economic action, shall give the Employer two (2) business days' written notice of its intention to take such economic action.

To be a legal grievance under this Agreement, the Employee or the Union must present said grievance in writing to the Employer representative within thirty (30) days of the event giving rise to the grievance or within thirty (30) days after such grievance comes to the knowledge of the aggrieved Employee.

**Section 2.**   Except as otherwise provided in the wage and benefit provisions of this Agreement and in Article 2, Section 3, the grievance machinery provided herein and the

18

June 28, 2006

administrative and judicial remedies and procedures provided by the statute are the sole means of settling any dispute by the employees against the Employers whether relating to the interpretation of this Agreement or otherwise; accordingly, neither the Union nor the Employees will instigate, promote, or engage in any strike, slow-down, or concerted withholding of services during the term of this Agreement, provided no Employee shall be disciplined for refusing to cross a lawful primary picket line established by any other union. The Employer agrees that there will be no lockout during the term of the Agreement.

**Section 3.** Employees, Employers and the Union are encouraged to utilize the Grievance Procedure prior to seeking judicial remedies.

## ARTICLE 19

## VACATIONS

Each Employee may take a two (2) week vacation. Vacations will, in so far as possible, be granted at times most desired by the Employee. However, in order to insure an orderly operation, sufficient notice in advance must be given and then mutually agreed to by the Employer. An Employee may take a third week's vacation.

## ARTICLE 20

## HEALTH AND PENSION AND ANNUITY CONTRIBUTIONS

**Section 1.** Effective June 1, 2006, the Employer shall pay Six Dollars and Seventy Four Cents ($6.74) for each hour worked by all persons performing bargaining unit work into the Health and Welfare Trust Fund plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2007 and June 1, 2008. The Employer is required to make contributions to the Fund for employee/owner, partial owner, or direct relative; husband, wife, brother or sister, son or daughter, performing work of a type included or not included within the jurisdiction of this Agreement, including but not limited to supervision, general management, sales, estimating, clerical or maintenance work, the Employer of the Employee shall make contributions to the Health and Welfare Fund on behalf of that Employee for a minimum of one hundred sixty (160) hours per month.

**Section 2.** Effective June 1, 2006, the Employer shall pay Five Dollars and Forty Cents ($5.40) for each hour worked by all persons performing bargaining unit work into the Local No. 27 Pension and Retirement Plan plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2007 and June 1, 2008. The Employer is required to make contributions to the Fund for the Employee/owner, partial owner, or direct relative; husband, wife, brother or sister, son or daughter,

19

June 28, 2006

performing work of a type included or not included within the jurisdiction of this Agreement, including but not limited to, supervision, general management, sale, estimated, clerical or maintenance work, the Employer of the Employee shall make contributions to the Pension and Retirement Plan on behalf of that Employee for a minimum of one hundred sixty (160) hours per month.

**Section 3.**   1a.   Commencing the first day of June 2006, and for the duration of the Agreement plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2007 and June 1, 2008, and any renewals or extensions thereof, the Employer agrees to make payments to the International Brotherhood of Painters and Allied Trades Union and Industry Pension and Annuity Fund for each Employee covered by this Agreement, as follows:

1b.   Effective June 1, 2006 for each hour or portion thereof, for which an employee received pay, the Employer shall make a contribution of Four Dollars and Seventy Five Cents ($4.75) to the above named Pension and Annuity Fund plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2007 and June 1, 2008.

1c.   For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the Employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

1d.   Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

1e.   The payments to the Pension and Annuity Fund required above, shall be made to the International Brotherhood of Painters and Allied Trades Union and Industry National Pension and Annuity Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

2.   The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

3.   All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension and Annuity Fund.

June 28, 2006

4.    If an Employer fails to make contributions to the Pension and Annuity Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of the payments due together with attorney's fees and such liquidated damages not to exceed Fifteen Percent (15%) as may be assessed by the Trustees. The Employer's liability for payment under this Article or for non-payment of wages shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause or for non-payment of wages which may be provided or set forth elsewhere in this Agreement.

5.    The Pension and Annuity Plan adopted by the trustees of said Pension and Annuity Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

Section 4.    Payments to the Glaziers Union Local No. 27, Pension and Retirement Plan and Glazing Employers and Glaziers Union Local No. 27 Health and Welfare Plan, shall be made monthly, no later than the tenth (10th) day of the succeeding month for which hours are reportable.

Each Employer agrees that any payment not made within fifteen (15) days of the succeeding month for which hours are reportable, shall be subject to liquidated damages of Fifteen Percent (15%) in addition to the amount originally required under the terms of this Agreement requiring a contribution to the Pension and Retirement and Health and Welfare Plan.

Section 5.    If an Employer fails to make contributions to any of the Funds referred to in this Article within ten (10) days after the date required by the Trustees of this Agreement, the Union shall have the right to take whatever legal steps are necessary to secure compliance with this Agreement, and any other provisions hereof to the contrary notwithstanding and the Employer shall be liable for all costs for collection of the payments due together with attorney's fees and such liquidated damages not to exceed Fifteen Percent (15%) as may be levied by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement; providing the Union, before resorting to economic action such as striking or picketing, shall give the Employer two (2) business days' written notice of its intention to take such economic action.

## BONDING

Section 6.    Each Employer agrees that before commencing any work to which this Agreement applies, a performance bond in the sum of Fifty Thousand Dollars ($50,000.00) shall be

21

June 28, 2006

provided to insure the prompt and full payment of all contributions due to the Welfare Fund, Pension Fund, and the Apprenticeship Fund.

(b) In the event an Employer fails for any reason to satisfy the bonding requirement above, the Employer shall be personally liable to the above Funds in the amount of Fifty Thousand Dollars ($50,000.00) plus all unpaid amounts in excess of that sum which are due the Funds by that Employer and legal fees and cost of collection. In the event the Employer is a corporation, liability under this paragraph shall be imposed not only on the corporation, but also personally on each corporate official of that Employer empowered to execute agreements or sign checks on the corporation's behalf, or to designate the persons empowered to do so. The provisions of this paragraph shall in no way relieve or excuse any Employer of the obligation to provide the bond described above, nor shall this provision limit the personal liability of said corporate officers based on operation of law.

(c). Any Employer commencing work in violation of the requirements set forth above shall be in violation of this Fringe Benefit Fund contribution payment provision of this Agreement.

## ARTICLE 21

## CHICAGOLAND CONSTRUCTION SAFETY COUNCIL/LABOR MANAGEMENT INITIATIVE

**Section 1.** Effective June 1, 2006, each Employer shall contribute Three Cents ($.03) for each hour worked by employees under this Agreement to the Chicagoland Construction Safety Council, a not-for-profit corporation.

**Section 2.** Effective June 1, 2006, each Employer shall contribute Five Cents ($.05) for each hour worked by employees under this Agreement to the Painters and Allied Trade Labor Management Cooperation Initiative (P&ATLMCI), a not-for-profit organization. Contributions will be remitted to the Apprentice Training Fund for distribution to the P&ATLMCI.

## ARTICLE 22

## DISCIPLINARY ACTION

The Union agrees to cooperate with Management and support disciplinary bars given to Employees for just cause.

## ARTICLE 23

## FEDERAL AND STATE LEGISLATION

**Section 1.** The provisions of this Agreement shall be effective only to the extent

22

June 28, 2006

permitted by the Labor Management Relations Act of 1947, as amended.

**Section 2.** In the event that any Federal or State legislation, governmental regulation or court decisions cause invalidation of any Article or Section of this Agreement, all other Articles and Sections not so invalidated shall remain in full force and effect.

June 28, 2006

## ARTICLE 24

Having complied with all the provisions of this Agreement on its part to be performed, the Employer shall be permitted to advertise and otherwise identify the Employer as a Union shop.

In the event this Agreement is terminated, then all such advertising shall be immediately canceled or otherwise recalled.

## ARTICLE 25

## DRUG TESTING

If an owner or general contractor requires the Glazing Contractors employees to submit to a drug testing program or policy, the Union will permit such testing provided it is applied equally to all trades on the site.

An Employer may request a drug free work place, provided Employer tests all company personnel, including management, office personnel, glaziers, other union and hourly employees of other trades employed by the Employer. All such personnel are required to be tested and have a drug free card.

All drug testing and notifications shall be conducted by Employer at his expense.

## ARTICLE 26

## EXECUTION

The Association hereby agrees that all of its members and those employers who have assigned their bargaining rights, both collectively and individually, shall be bound by this Agreement, just as surely as if each and every member signed it and whether or not each does so individually and whether or not membership is retained in the Employer Association party to this Agreement. The Employer, as an Association, through its duly elected officers and representatives hereby declares and affirms that each and every member has so agreed and has authorized the officers and representatives named below to sign this agreement, both for the Association and for each member individually. Individual executions are not required for this Agreement and any amendments, extensions or renewals thereof to be binding on such individual employers represented by the Association.

24

June 28, 2006

## ARTICLE 27

## CONTRACT DURATION

      This Agreement shall continue in full force and effect from June 1, 2006 through May 31, 2009 and shall continue in force and effect from year to year thereafter, unless either party shall desire to change any of the terms herein, in which case a written notice must be served to the other party not less than sixty (60) days nor more than ninety (90) days by registered mail or certified mail prior to the expiration date.

      IN WITNESS WHEREOF, said parties have to this Agreement, or by their representatives on their behalf, respectively, set their hands and seals.

PAINTERS DISTRICT COUNCIL NO. 14

By: _____

_____

ASSOCIATION OF
GLAZING CONTRACTORS

GLAZIERS, ARCHITECTURAL METAL AND
GLASS WORKERS LOCAL UNION NUMBER 27
CHICAGO AND VICINITY, INTERNATIONAL
UNION OF PAINTERS AND ALLIED
TRADES, AFL-CIO

BY: _____

_____
(Please print name signed above)

BY: _____
             Business Manager

DATE: _____

DATE: _____

25



PHONE 708-443-9000
FAX 708-443-9007

TERRENCE FITZMAURICE
BUSINESS MANAGER/
SECRETARY-TREASURER

MICHAEL MABUS
BUSINESS REPRESENTATIVE

MICHAEL O'DONNELL
BUSINESS REPRESENTATIVE

MICHAEL COOK
BUSINESS REPRESENTATIVE

JAMES AUGUSTYN
PRESIDENT

RICHARD GAIDEUS
VICE-PRESIDENT

MICHAEL OHM
RECORDING SECRETARY

LAWRENCE TASIC
FINANCIAL SECRETARY

# Glaziers, Architectural Metal and Glass Workers
# Local Union No. 27, Chicago and Vicinity

OF THE

INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO
AFFILIATED WITH PAINTERS' DISTRICT COUNCIL NO. 14

MEETS THE 4TH MONDAY OF EACH MONTH, 6309 WEST 26TH STREET, BERWYN

4225 LAWNDALE AVENUE • LYONS, IL 60534

## TO ALL GLAZING EMPLOYERS OF CHICAGO AND VICINITY:

Please be advised that effective, June 1, 2006 through May 31, 2007 (First year of Three year contract), the wage scale and fringe benefits for members of Glaziers Union Local #27 will be as follows:

| | |
|---|---|
| HOURLY WAGE RATE | $33.00 ($1.60 increase per hour) |
| LOCAL #27 PENSION CONTRIBUTION | $ 5.40 per hour ($.35 increase per hour) |
| HEALTH AND WELFARE CONTRIBUTION | $ 6.74 per hour ($.25 increase per hour) |
| I.U.P.A.T. PENSION FUND | $ 4.75 per hour ($.75 increase per hour into annuity)* |
| I.U.P.A.T. LABOR MANAGEMENT FUND | $ .05 per hour (no increase) |
| APPRENTICESHIP TRAINING FUND | $ .65 per hour ($.10 increase) |
| (New - S.T.A.R. Program .05 per hour is included in apprenticeship training fund total) | |
| CHICAGOLAND CONST. SAFETY COUNCIL | $ .03 per hour (no increase) |

| | |
|---|---|
| TOTAL HOURLY PACKAGE | $50.62 + |

Each Glazier and Apprentice Glazier shall receive $5.00 (no increase) per day Expense Money, regardless of where they work.

THE FOLLOWING ARE DEDUCTED FROM THE EMPLOYEE'S WAGES

| | |
|---|---|
| ADMINISTRATIVE DUES | 2% of Gross Wages (no increase) |
| LOCAL POLITICAL COMMITTEE | $ .05 per hour |

| | |
|---|---|
| HIGH PAY (30 feet or more) | $ .50 per hour over prevailing wage rate (no increase) |

ALL FOREMEN will receive $1.50 ($.50 increase) per hour above the prevailing wage rate.
GENERAL FOREMEN will receive $2.00 ($.75 increase) per hour above the prevailing wage rate.

*I.U.P.A.T. Contribution allocates $ 3.75 per hour into the annuity and $ 1.00 per hour into the pension.

Future package:     Effective June 1, 2007 - $3.25 per hour - distribution at a later date
                 Effective June 1, 2008 - $3.35 per hour - distribution at a later date

PLEASE ADVISE THE PROPER DEPARTMENTS OF THE ABOVE INFORMATION.

Fraternally,

*Michael Mabus*

Michael Mabus
Business Representative
Glaziers Union Local 27

*O 0 3667*
*G 0 0027*

## ARTICLE 27

## CONTRACT DURATION

This Agreement shall continue in full force and effect from June 1, 2006 through May 31, 2009 and shall continue in force and effect from year to year thereafter, unless either party shall desire to change any of the terms herein, in which case a written notice must be served to the other party not less than sixty (60) days nor more than ninety (90) days by registered mail or certified mail prior to the expiration date.

IN WITNESS WHEREOF, said parties have to this Agreement, or by their representatives on their behalf, respectively, set their hands and seals.

O,W. Taylor LLC.
551 LOCUST RUN Rd
*Company address*
CIN, OHIO 45245

Phone: 684·0900
Fax: (513)· 684-0921

By: _____
Signature

OTIS W. TAYLOR
(Please print name signed above)

Title: Single Member

DATE: 8-22-07

PAINTERS DISTRICT COUNCIL NO. 14

By: _____
Terrence Fitzmaurice
Business Manger /Secretary Treasurer

DATE: 9-7-07

GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS UNION LOCAL #27, CHICAGO AND VICINITY INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL-CIO

BY: _____
Michael Mabus/Business Representative

DATE: 9-7-2007

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

### Establishing the

### International Painters and Allied Trades

### Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employee" or "Employers").

## WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

36479-3


EXHIBIT

be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.* AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2.* PENSION FUND. The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

- 2 -

*Section 3.* PENSION PLAN. The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof. The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

*Section 4.* ANNUITY PLAN. The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof. The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

*Section 5.* TRUSTEES.

(a) The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b) The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c) The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees. Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

*Section 6.* UNION. The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

- 3 -

36479-3

*Section 7.*    CONTRIBUTING EMPLOYER.  The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund.  In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

*Section 8.*    COLLECTIVE BARGAINING AGREEMENT.  The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

*Section 9.*    EMPLOYEE.  The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

*Section 10.*    EMPLOYER CONTRIBUTIONS. The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue , whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund. Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

## ARTICLE II

## GENERAL

*Section 1.*    ESTABLISHMENT OF FUND. As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

- 5 -

36479-3

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees

for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

Section 2.    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for

the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further

provide the means for financing the expenses of the Trustees and the operation and administration of

the Fund, in accordance with this Agreement and Declaration of Trust.

# ARTICLE III

# UNITED STATES TRUSTEES

Section 1.    JOINT ADMINISTRATION.  The operation and administration of the

Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the

Trustees appointed by the Union.

Section 2.    ACCEPTANCE OF TRUSTEESHIP.  The Trustees, by affixing their

signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and

act in their capacities strictly in accordance with the provisions thereof. Each additional or successor

Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be

deemed to have accepted the Trust created and established by this instrument and to have consented

to act as Trustee or to have agreed to administer the Trust Fund as provided herein.  Such written

acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the

receipt of such acceptance.

Section 3.    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until

his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

- 6 -

36479-3

as hereinafter provided.

    *Section 4.*    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

    *Section 5.*    UNION TRUSTEES. The Union shall be and is empowered to appoint all Union Trustees.

    *Section 6.*    EMPLOYER TRUSTEES. The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

    *Section 7.*    REMOVAL OF TRUSTEES. The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

    *Section 8.*    WHO MAY BE TRUSTEES. At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees. Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified during their tenure, until removed in accordance with provisions in this Trust. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

    *Section 9.*    FORM OF NOTIFICATION. In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

36479-3

the Union. In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association. Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund.

*Section 10.*    VESTING OF POWERS AND DUTIES. Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

# ARTICLE IV

# CANADIAN TRUSTEES

*Section 1.*    DECISIONS. The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

*Section 2.*    APPOINTMENT. The Canadian Board of Trustees shall consist of up to 6 Trustees. The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens. Canadian Employers may appoint 2 Trustees who shall be Canadian citizens. Employer Trustees of this Fund may appoint 1 Trustee.

*Section 3.*    REMOVAL. The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

Section 4.    WHO MAY BE TRUSTEES. Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located. Each Employer Trustee must also employ an average of twenty-five or more employees. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

Section 5.    PROCEDURES. The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

36479-3

# ARTICLE V

# POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*    PROPERTY AND ASSISTANCE.    The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*    CONSTRUCTION OF AGREEMENT. The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*    GENERAL POWERS. The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

- 10 -

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

*Section 4.*    COMPENSATION. The Union and Employer Trustees shall not receive compensation for the performance of their duties. However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

*Section 5.*    AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

*Section 6.*    PERSONAL LIABILITY. The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

*Section 7.*    BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all

36479-3

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund.

*Section 8.*    EXECUTION OF DOCUMENTS.  The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

*Section 9.*    DEPOSIT AND WITHDRAWAL OF FUNDS.  All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks.  No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

*Section 10.*    SURETY BONDS.  The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

- 14 -

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*    RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*    EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*    MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

- 15 -

36479-3

*Section 4.*    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

*Section 5.*    REPORT ON CONTRIBUTIONS. The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

*Section 6.*    AUDITS. The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

## ARTICLE VII

## PLAN OF BENEFITS

*Section 1.*      BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.*      RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.*      ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.*      METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.*      WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

   *Section 6.*    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

   *Section 7.*    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

   *Section 1.*    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

   *Section 2.*    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

36479-3

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING. Action by the Trustees may also be taken by them in writing without a meeting; provided, however, that in such cases there shall be unanimous written concurrence by all the Trustees.

Section 4.    QUORUM (UNITED STATES). In all meetings of the Trustees, two Trustees shall constitute a quorum for the transaction of business providing that there is at least one Employer and one Union Trustee present at the meeting. The vote of any absent Trustee shall be cast by the Trustees present, designated by the same party with the same force as if such absent Trustee was present. If at any time there is an unequal number of Employer and Union Trustees appointed, the Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES). All action by the Trustees shall be by majority decision of the Employer and Union Trustees. Such majority vote shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA). In all meetings of the Canadian

- 19 -

36479-3

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

*Section 7.*    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

## ARTICLE IX

## IMPARTIAL ARBITRATOR

*Section 1.*    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

*Section 2.*    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

## ARTICLE X

## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*      COUNTERPARTS.  This Agreement and Declaration of Trust may be executed in any number of counterparts.  The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*      WRITTEN INSTRUMENT.  An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*      EFFECTIVE DATE.  The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002. This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

## ARTICLE XI

## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*      AMENDMENT BY TRUSTEES.  This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees.  As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof.  Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

36479-3

Section 2.    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

## ARTICLE XII

## TERMINATION OF TRUST

Section 1.    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

Section 2.    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

Section 3.    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

36479-3

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

Section 4.    NOTIFICATION OF TERMINATION.  Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 1.    NON-REVERSION.  Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

Section 2.    TERMINATION OF INDIVIDUAL EMPLOYERS.  An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

Section 3.    VESTED RIGHTS.  No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.    ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.    SITUS.  The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.    CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.    CERTIFICATION OF TRUSTEES' ACTIONS.  The Co-Chairmen of the

- 24 -

)6479-)

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

Section 8.    NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

Section 9.    SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 10.    TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _____
        James A. Williams
        General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _____
        John Frye
        Chairman

- 25 -

36479-3

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

**Employer Trustees**

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

Robert Kucheran
William Nicholls

**Employer Trustees**

Adolf Gust
Richard Pazdzierski

## CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | The O.W. TAYLOR, LLC a/k/a O.W. Taylor, LLC a/k/a O W Taylor, LLC f/k/a The O.W. Taylor Co., 551 Locust Run Road, Cincinnati, OH 45245 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Philip A. Lozano, Esquire
Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor,
510 Walnut Street, Phila., PA 19106
(215) 351-0669

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION** (SELECT ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY!)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| G. Habeas Corpus/2255 | H. Employment Discrimination | I. FOIA/PRIVACY ACT | J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. Labor/ERISA (non-employment) | L. Other Civil Rights (non-employment) | M. Contract | N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Select YES only if demanded in complaint    JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE July 11, 2008    SIGNATURE OF ATTORNEY OF RECORD [signature]

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# International Painters And Allied Trades Industry Pension Plan



## Rules and Regulations
### as amended and restated as of January 1, 2003



EXHIBIT

3

# IUPAT INDUSTRY PENSION PLAN

PAGE i

## TABLE OF CONTENTS

**ARTICLE 1.    ESTABLISHMENT & CONSTRUCTION** ................................................. 1

Section 1.01    Establishment of Plan and Name ........................................... 1
Section 1.02    Purpose ............................................................................... 1
Section 1.03    Trustees ............................................................................... 1
Section 1.04    Plan Effective Date ............................................................ 1
Section 1.05    Amendment of Plan ........................................................... 2
Section 1.06    Prohibited Amendments .................................................... 2
Section 1.07    Merger or Transfer of Plan Assets ..................................... 2
Section 1.08    Termination of Plan ........................................................... 2
Section 1.09    Termination Actions .......................................................... 3
Section 1.10    Notices ............................................................................... 3
Section 1.11    Unauthorized Representations ........................................... 3
Section 1.12    Construction ....................................................................... 3
Section 1.13    Choice of Law .................................................................... 4
Section 1.14    Severability ........................................................................ 4

**ARTICLE 2.    ADMINISTRATION** ....................................................................... 4

Section 2.01    Powers Of Trustees ............................................................ 4
Section 2.02    Duties and Powers of Plan Administrator ......................... 5
Section 2.03    Discretion ........................................................................... 5
Section 2.04    Consultants ........................................................................ 5
Section 2.05    Delegation and Allocation of Responsibility ..................... 5
Section 2.06    Reliance .............................................................................. 5
Section 2.07    Limitation of Liability ........................................................ 5
Section 2.08    Indemnity ........................................................................... 6

**ARTICLE 3.    PARTICIPATION** ........................................................................... 6

Section 3.01    Eligible Employees ............................................................ 6
Section 3.02    Entry Date .......................................................................... 7
Section 3.03    Termination of Participation .............................................. 7
Section 3.04    Reinstatement of Participation .......................................... 7
Section 3.05    Acceptance of a New Contributing Employer ................... 8
Section 3.06    Acceptance of A New Affiliated Employer ....................... 8
Section 3.07    Additional Conditions ....................................................... 9
Section 3.08    Delinquent Employers ....................................................... 9
Section 3.09    Mergers .............................................................................. 10

**ARTICLE 4.    VESTING** ....................................................................................... 10

Section 4.01    Vested Participant .............................................................. 10
Section 4.02    Service Vesting .................................................................. 10
Section 4.03    Age Vesting ....................................................................... 11
Section 4.04    Termination Vesting .......................................................... 11
Section 4.05    Vesting Changes ................................................................ 11
Section 4.06    Years of Vesting Service ................................................... 11
Section 4.07    One-Year Break-in-Service ............................................... 12
Section 4.08    Effect of One-Year Break .................................................. 12
Section 4.09    Cure of One-Year Break .................................................... 12
Section 4.10    Family and Medical Leave ................................................ 13
Section 4.11    Qualified Military Service .................................................. 13
Section 4.12    Permanent Break in Service .............................................. 14

# IUPAT INDUSTRY PENSION PLAN                              PAGE ii

Section 4.13    Effect of Permanent Break ................................................................. 14

**ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION** ........................... 15

Section 5.01    Accrued Benefit ............................................................................ 15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification .... 16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount .... 17
Section 5.05    Benefit Credit for Service during the Contribution Period ................... 19
Section 5.06    Maximum Contribution Rates ............................................................ 19
Section 5.07    Extra Contributions ...................................................................... 20
Section 5.08    Contribution Rate ........................................................................ 20
Section 5.09    Contribution Rate Changes .............................................................. 20
Section 5.10    Benefit Break-In-Continuity ............................................................ 21
Section 5.11    New Groups .............................................................................. 22
Section 5.12    Reciprocal Pension Agreements ......................................................... 22
Section 5.13    Merger Agreements ...................................................................... 23
Section 5.14    Post-Retirement Benefit Increases .................................................... 23

**ARTICLE 6.    PENSION BENEFIT PAYMENT** ....................................................... 24

Section 6.01    Normal Retirement Pension – Eligibility ............................................. 24
Section 6.02    Normal Retirement Age ................................................................. 24
Section 6.03    Normal Retirement Pension – Amount .................................................. 24
Section 6.04    Late Retirement Pension – Eligibility .............................................. 25
Section 6.05    Late Retirement Pension – Amount .................................................... 25
Section 6.06    Mandatory Payment of Benefits ....................................................... 25
Section 6.07    Mandatory Payment - Amount ........................................................... 26
Section 6.08    Special Early Retirement Pension - Eligibility .................................... 27
Section 6.09    Special Early Retirement Pension - Amount ......................................... 28
Section 6.10    Early Retirement Pension —Eligibility .............................................. 28
Section 6.11    Early Retirement Pension - Amount ................................................... 28
Section 6.12    Disability Pension — Eligibility ..................................................... 29
Section 6.13    Disability Pension - Amount .......................................................... 30
Section 6.14    Effect of Recovery by a Disabled Pensioner ....................................... 30
Section 6.15    Early Vested Pension — Eligibility .................................................. 31
Section 6.16    Early Vested Pension - Amount ....................................................... 31
Section 6.17    Partial Pension - Eligibility ........................................................ 32
Section 6.18    Partial Pension - Amount ............................................................. 32
Section 6.19    Partial Pension – Payment Forms ..................................................... 32
Section 6.20    Non-Duplication of Pensions .......................................................... 32
Section 6.21    Taxes .................................................................................. 33

**ARTICLE 7.    STANDARD PENSION PAYMENT FORMS** .......................................... 33

Section 7.01    General Payment Restrictions ......................................................... 33
Section 7.02    Commencement of Benefits Generally ................................................. 33
Section 7.03    Married Participants - General Rules ................................................ 34
Section 7.04    Single Participants - General Rules ................................................. 34
Section 7.05    Small Benefits ........................................................................ 34
Section 7.06    Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment
                for Married Participants ............................................................. 35
Section 7.07    Waiver of Husband-and-Wife Pension .................................................. 35
Section 7.08    Pre-retirement Surviving Spouse Pension ........................................... 37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension .................................. 37
Section 7.10    Pre-retirement Surviving Spouse Pension – Spouse Alternatives ..................... 38
Section 7.11    Qualified Domestic Relations Orders ................................................ 39

# IUPAT INDUSTRY PENSION PLAN                                        PAGE iii

Section 7.12    Qualified Domestic Relations Order Procedures ..................................................39
Section 7.13    Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
                Payment for Unmarried Participants ..................................................................40
Section 7.14    Pre-Retirement Death Benefit – Eligibility ........................................................40
Section 7.15    Post-Retirement Death Benefit – Amount ..........................................................41
Section 7.16    Beneficiary ..........................................................................................................41
Section 7.17    Retirement and Suspension of Benefits Before Normal Retirement Age ............42
Section 7.18    Pensioner Reporting of Work Before Normal Retirement Age ...........................42
Section 7.19    Resumed Benefits Before Normal Retirement Age – Eligibility ........................43
Section 7.20    Resumed Benefits Before Normal Retirement Age - Amount .............................43
Section 7.21    Suspension of Benefits after Normal Retirement Age .......................................44
Section 7.22    Plan Disclosure of Suspension Rules ................................................................45
Section 7.23    Pensioner Reporting of Work after Normal Retirement Age ..............................45
Section 7.24    Advance Determinations of Suspendible Work ..................................................46
Section 7.25    Plan Notice of Suspension after Normal Retirement Age ...................................46
Section 7.26    Resumption of Benefit Payments after Normal Retirement Age - Eligibility .....46
Section 7.27    Resumption of Benefit Payments after Normal Retirement Age - Amount .........47
Section 7.28    Waiver of Suspension ........................................................................................48
Section 7.29    Incompetence or Incapacity of a Pensioner or Beneficiary ...............................48
Section 7.30    Non-Assignment of Benefits ..............................................................................48
Section 7.31    Payments to Minors ...........................................................................................49

ARTICLE 8.     OPTIONAL FORMS OF PENSION PAYMENT ..............................................49

Section 8.01    General ................................................................................................................49
Section 8.02    Joint and Survivor Options ...............................................................................50
Section 8.03    Social Security (Level Income) Option .............................................................52
Section 8.04    Combined Level Income and Joint and Survivor Option ...................................52
Section 8.05    Ten Year Certain Option ....................................................................................53
Section 8.06    Lump Sum Payment Option ...............................................................................53
Section 8.07    Benefit Payment Restrictions .............................................................................54
Section 8.08    Trustee-to-Trustee Transfers - Rollovers ..........................................................58

ARTICLE 9.     CLAIMS PROCEDURE & BENEFIT PAYMENTS ......................................60

Section 9.01    Application ..........................................................................................................60
Section 9.02    Partial Pension - Application Procedure ...........................................................60
Section 9.03    Information and Proof ........................................................................................60
Section 9.04    Trustee Discretion and Authority ......................................................................60
Section 9.05    Initial Claim Determination ...............................................................................61
Section 9.06    Request for Review ............................................................................................61
Section 9.07    Decision on Review ...........................................................................................61
Section 9.08    Administrative Delay .........................................................................................62
Section 9.09    No Rights to Assets ............................................................................................62

ARTICLE 10.    FUNDING ......................................................................................................62

Section 10.01   Funding Policy ...................................................................................................62
Section 10.02   Trust for Participants .........................................................................................62
Section 10.03   Investments ........................................................................................................62
Section 10.04   Source of Benefit Payments ..............................................................................63
Section 10.05   Expenses .............................................................................................................63
Section 10.06   Non-Reversion ...................................................................................................63
Section 10.07   Employer Contributions ....................................................................................63
Section 10.08   Irrevocability of Contributions ..........................................................................63
Section 10.09   Qualified Military Service Contributions ..........................................................63

# IUPAT INDUSTRY PENSION PLAN

## PAGE iv

Section 10.10  Return of Mistaken Contributions ............................................................ 64
Section 10.11  Delinquent Employers ............................................................................ 64
Section 10.12  Collection of Delinquent Contributions ................................................. 65

ARTICLE 11.    CONTRIBUTING EMPLOYER WITHDRAWAL ........................................ 66

Section 11.01  Employer Withdrawal - In General ......................................................... 66
Section 11.02  Control Group Employer - Definition ..................................................... 66
Section 11.03  Construction Industry Employers - Definition ....................................... 66
Section 11.04  Complete Withdrawal - Defined .............................................................. 66
Section 11.05  Partial Withdrawal - Defined .................................................................. 67
Section 11.06  Unfunded Vested Liability ...................................................................... 67
Section 11.07  Title IV Vested Benefits ......................................................................... 67
Section 11.08  Initial Unfunded Vested Liability ........................................................... 68
Section 11.09  Annual Change in Unfunded Vested Liability ........................................ 68
Section 11.10  Reallocated Liability ............................................................................... 68
Section 11.11  Mergers .................................................................................................... 69
Section 11.12  Amount of Control Group Employer Liability for Complete Withdrawal ..... 69
Section 11.13  Employer Proportionate Share of Initial Unfunded Vested Liability ..... 70
Section 11.14  Employer Proportionate Share of Annual Changes in Unfunded Vested Liability ..... 70
Section 11.15  Apportionment Base Period ..................................................................... 71
Section 11.16  Base Period Employer Contributions ...................................................... 71
Section 11.17  Pre-1980 Terminated Unit Contributions ............................................... 72
Section 11.18  Employer Proportionate Share of Annual Charges for Reallocated Liability ..... 72
Section 11.19  Transfers of Liability ............................................................................... 72
Section 11.20  De Minimis Reduction ............................................................................ 73
Section 11.21  20-Year Payment Limitation ................................................................... 73
Section 11.22  Insolvency Reduction .............................................................................. 73
Section 11.23  Partial Withdrawal Liability - Amount ................................................... 73
Section 11.24  Payment of Withdrawal Liability ........................................................... 73
Section 11.25  Notice and Collection of Withdrawal Liability ...................................... 74
Section 11.26  Withdrawal Liability Review .................................................................. 74
Section 11.27  Withdrawal Liability Arbitration ............................................................ 75
Section 11.28  Withdrawal Liability Default .................................................................. 75
Section 11.29  Withdrawal Liability Collection Litigation ............................................ 75
Section 11.30  Withdrawal Liability Abatement – Construction Industry Employers ..... 76
Section 11.31  Withdrawal Liability Abatement – Other Employers .............................. 76
Section 11.32  Mass Withdrawal .................................................................................... 76

ARTICLE 12.    TAX RULES AND AFFILIATED EMPLOYERS ..................................... 76

Section 12.01  Non-Discrimination ................................................................................. 76
Section 12.02  Affiliated Employer Participation ........................................................... 77
Section 12.03  Conditional Adoption .............................................................................. 77
Section 12.04  General Affiliated Employer Rules ......................................................... 77
Section 12.05  Limitation Employer ............................................................................... 78
Section 12.06  Top-Heavy Requirements ....................................................................... 78
Section 12.07  Maximum Benefit Limit .......................................................................... 80
Section 12.08  Defined Benefit Plan Limit ..................................................................... 80
Section 12.09  Section 415 Aggregation ......................................................................... 82
Section 12.10  Maximum Benefits Coordination ............................................................ 82
Section 12.11  Restricted (High-25) Employees .............................................................. 82

ARTICLE 13.    DEFINITIONS ...................................................................................... 83

## IUPAT INDUSTRY PENSION PLAN                    PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan

### Section 10.04  Source of Benefit Payments

Plan assets will be the sole source for the payment of benefits under the Plan.  This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

### Section 10.05  Expenses.

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

### Section 10.06  Non-Reversion.

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

### Section 10.07  Employer Contributions.

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

### Section 10.08  Irrevocability of Contributions

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

### Section 10.09  Qualified Military Service Contributions

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

    (1)    the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

    (2)    average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c) Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

    (1)    Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

    (2)    Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

## Section 10.10  Return of Mistaken Contributions

(a) The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b) A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees.

(c) A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d) A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

## Section 10.11  Delinquent Employers

(a) The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer.

(b) To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)    the amount of interest charged on the unpaid contributions, or

        (B)    20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

AMENDMENT TO THE
INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
(as restated effective January 1, 1999)

Major Topic:          Title to Plan Assets

General Effective Date:      January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.    Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

122882-1

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
James A. Williams, Co-Chair

Date: _October 14_, 2003

122882-1

2